*By order of the Bankruptcy Appellate Panel, the precedential effect
of this decision is limited to the case and parties pursuant to
6th Cir. BAP LBR 8024-1(b).  See also 6th Cir. BAP LBR 8014-1(c).*

*File Name: 18b0006n.06*

# BANKRUPTCY APPELLATE PANEL

## OF THE SIXTH CIRCUIT

---

IN RE:  MOSES MONWEAL MCCORMICK,

     *Debtor-Appellant*.

Nos. 17-8039/8040/18-8015

On Appeal from the United States Bankruptcy Court
for the Southern District of Ohio at Columbus.
No. 2:17-bk-55146—C. Kathryn Preston, Judge.

Decided and Filed:  December 26, 2018

Before: DALES, HARRISON, and WISE, Bankruptcy Appellate Panel Judges.

---

### COUNSEL

---

**ON BRIEF:**  Timothy A. Riedel, BAILEY CAVALIERI LLC, Columbus, Ohio, for Appellee.
Moses McCormick, Akron, Ohio, pro se Appellant.

---

### OPINION

---

SCOTT W. DALES, Bankruptcy Appellate Panel Judge.  In these cases, the bankruptcy court denied the motions of debtor Moses McCormick ("McCormick") to hold two creditors in contempt, and impose sanctions, for alleged violations of the automatic stay.  For the reasons stated below, the bankruptcy court's orders are AFFIRMED.

### ISSUES ON APPEAL

The issue on appeal in each of these cases is whether the bankruptcy court erred in denying McCormick's motions for sanctions for alleged violations of the automatic stay.

## JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit ("BAP") has jurisdiction to decide these appeals.  The United States District Court for the Southern District of Ohio has authorized appeals to the BAP and no party has timely elected to have the appeals heard by the district court. 28 U.S.C. § 158(b)(6), (c)(1).  A final order of the bankruptcy court may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1).

In determining the finality of a bankruptcy court order, the BAP will apply the test the Sixth Circuit recently prescribed in *Ritzen Group, Inc. v. Jackson Masonry, LLC* (*In re Jackson Masonry, LLC*), 906 F.3d 494, 499 (6th Cir. 2018).  The Sixth Circuit articulated a two-step approach to determining whether an order of a bankruptcy court is immediately appealable under 28 U.S.C. § 158(a)(1): "a bankruptcy court's order may be immediately appealed if it is (1) 'entered in [a] . . . proceeding' and (2) 'final'— terminating that proceeding."  *Id.*  "Using this approach, the reviewing court must first identify the 'proceeding' or appropriate 'judicial unit' from which the order emanated, and then determine whether the order under review is a 'final' order that terminated the proceeding or 'unit' so identified."  *In re Lane*, 591 B.R. 298, 302 (B.A.P. 6th Cir. 2018).

In these appeals, the contested matter relating to each of McCormick's sanctions motions constitutes the relevant judicial unit.  The point of each was to determine whether the creditor had violated the stay and, if so, whether the court should impose sanctions.  The proceedings were not intended to determine the outcome of the entire bankruptcy case as "[e]ach dispute was a quintessential 'piece' of the 'puzzle,' involving a discrete part of the case, but not the entire case itself."  *Id.*  And, each order under review finally and definitively resolved each discrete dispute.

Indeed, courts have consistently held that an order denying a motion for sanctions due to an alleged violation of the automatic stay is a final order.  *See In re Collett*, No. 13-8033, 2014 WL 2111309, at *1 (B.A.P. 6th Cir. May 21, 2014) ("An order denying a party's motion for sanctions for violating the automatic stay is a final appealable order."); *see also In re Glaspie*, 410 B.R. 261, 266 (E.D. Mich. 2007) ("'The order in this case denied [the] motion for contempt.

This ended the controversy regarding violation of the automatic stay[.]'") (quoting *Anastasia Cruises, Inc. v. Exxon Mobil Corp.* (*In re Commodore Holdings, Inc.*), 331 F.3d 1257, 1259 (11th Cir. 2003)).

The question of whether a violation of the automatic stay has occurred is a mixed question of law and fact. *See In re Baer*, No. 11-8062, 2012 WL 2368698 (B.A.P. 6th Cir. June 22, 2012) (citing *In re Perrin*, 361 B.R. 853 (B.A.P. 6th Cir. 2007)).

> As the Supreme Court recently observed, "[m]ixed questions are not all alike"—those that rest primarily on the facts are reviewed for clear error and those that rest primarily on the law are reviewed de novo. *U.S. Bank Nat'l Ass'n v. Vill. at Lakeridge*, LLC, —— U.S. ——, 138 S. Ct. 960, 966, —— L. Ed. 2d —— (2018). "[T]he standard of review for a mixed question all depends—on whether answering it entails primarily legal or factual work." *Id.*

*In re Felix*, 582 B.R. 915, 918 (B.A.P. 6th Cir. 2018). "De novo means that the appellate court determines the law independently of the trial court's determination." *Treinish v. Norwest Bank Minn., N.A.* (*In re Periandri*), 266 B.R. 651, 653 (B.A.P. 6th Cir. 2001) (internal quotation marks and citations omitted). "No deference is given to the trial court's conclusions of law." *Mktg. & Creative Solutions, Inc. v. Scripps Howard Broad. Co.* (*In re Mktg. & Creative Solutions, Inc.*), 338 B.R. 300, 302 (B.A.P. 6th Cir. 2006) (citations omitted). With respect to the bankruptcy court's factual findings, however, the BAP applies a clearly erroneous standard of review. Through this lens, a finding of fact is clearly erroneous when "although there is evidence to support it, the reviewing court . . . is left with the definite and firm conviction that a mistake has been committed." *Riverview Trenton R.R. Co. v. DSC, Ltd.* (*In re DSC, Ltd.*), 486 F.3d 940, 944 (6th Cir. 2007) (citations omitted). This deferential standard of review of factual findings affords the trial court considerable latitude, especially in evaluating the credibility of witnesses.

Primarily, McCormick challenges the bankruptcy court's factual determination that he did not present evidence establishing a violation of the automatic stay and damages resulting therefrom. Thus, the Panel reviews the bankruptcy court's findings to determine if they are clearly erroneous. The Panel, however, would reach the same result under a de novo standard of review.

**FACTS**

McCormick filed a voluntary chapter 7 bankruptcy petition on August 11, 2017. On September 27, 2017, he filed a motion alleging that his landlord, Scioto Management Group, LLC ("SMG"), had willfully violated the automatic stay, causing him to incur damages. (*In re McCormick*, Case No. 17-55146, ECF No. 28.) McCormick based his motion principally on an email SMG sent on September 12, 2017, in which SMG acknowledged the bankruptcy stay and simply inquired about McCormick's plans to continue to occupy the leased premises. While admitting it sent the email, SMG, in its response of October 18, 2017, asserted that the email did not violate the automatic stay because it was not threatening or coercive, nor did it seek to collect a pre-petition debt. Furthermore, SMG claimed the email was exempt from the stay pursuant to 11 U.S.C. § 365(p)(2).

On October 5, 2017, McCormick filed a motion alleging that creditor WOW! Internet, Cable & Phone ("WOW") had also violated the automatic stay, claiming that it sent him a bill requesting payment of $1,451.90 for cable services and equipment. (Case No. 17-55146, ECF No. 31.) WOW's response admitted that two statements were automatically generated after the filing of the petition even though a "bankruptcy/DO NOT COLLECT" notation had been placed in the company's records. Nevertheless, WOW contended that on October 2, 2017, when McCormick called the WOW call center he was connected to the bankruptcy group and told to disregard the bill, and that WOW was not attempting to collect the debt. WOW's call center agent also informed him how he could return the equipment at issue. (Case No. 17-55146, ECF No. 62.)

The bankruptcy court held an evidentiary hearing to consider both motions on December 12, 2017. In his opening statement, McCormick asserted compensatory damages totaling $24,983.00, including: expenses for traveling to and from the bankruptcy court to file the motions and responses, lost wages from pursuing the causes of action, and unspecified medical costs. McCormick also demanded $15,000.00 in punitive damages, for a total of $39,980.00. During the hearing, McCormick called three witnesses: Antoinette Seals, a former employee of SMG; his brother, Mark McCormick; and himself. Ms. Seals testified that her employer had instructed her to contact McCormick to "find out what [his] intention was" regarding continued

occupancy of the premises. (Tr. 17:12-19:24, *In re McCormick*, Case No. 17-55146, ECF No. 113 Dec. 12, 2017 ("Dec. Tr.").)

Mark McCormick testified that his brother had to miss work while doing the research and paperwork to bring the cause of action.  He also testified that he accompanied his brother to the emergency room because his brother was experiencing a migraine headache.  Mark McCormick believed his brother's migraine was caused either by the stress from bringing the stay action or from the alleged stay violation itself, his testimony was unclear.  SMG's attorney objected on the basis that Mark McCormick was not an expert qualified to diagnose any medical condition or the reasons for it.  However, the bankruptcy court allowed the testimony to the extent Mark McCormick was testifying to his own observations.

After the bankruptcy court reminded him that his opening statement was not evidence, McCormick called himself as his final witness.  He testified that the "whole action" had caused him a lot of stress because of the "countless hours" researching.  He mentioned the email and video of his meeting with SMG, as well as the WOW bill which was attached to his motion.  The court informed him that those filings and other documents did not constitute testimony or evidence because they were not formally offered or admitted at the hearing.  The court further stated "[t]hat's what we're here for right now." (Dec. Tr. 29:17-18.)  Nevertheless, McCormick, rested his case without offering any evidence other than the testimony just described.  After McCormick rested, the bankruptcy court asked him if he wished to move Exhibit R (the medical bill) into evidence.  Upon his affirmative response, SMG objected because the proposed exhibit had not been previously produced during discovery.  SMG also asserted that during his deposition, McCormick had "pled the Fifth Amendment and refused to answer any questions regarding damages or injuries that allegedly flowed from this alleged violation of the automatic stay." (Dec. Tr. 31:11-14.)  The bankruptcy court sustained the objection because, as McCormick conceded, the medical bill had not been produced in response to the discovery request.

After the bankruptcy court resolved this issue, SMG made an oral motion for the court to deny McCormick's sanctions motion owing to a failure to carry his burden of proof.  The bankruptcy court then found that McCormick had failed to present any evidence regarding a

violation of the automatic stay by either SMG or WOW and that McCormick had not proven any specific damages caused by either creditor.  (Dec. Tr. 35:4-7.)  Even though the email from SMG had not been offered as an exhibit during the hearing, the bankruptcy court reviewed it and found that it, too, did not violate the automatic stay, noting that "[t]here was no request for payment of debt [and] [t]here was no threatening tone to the email."  (Dec. Tr. 35:14-15.)  The bankruptcy court likewise found there was "no evidence at all in the record about any violation of the automatic stay by WOW."  (Dec. Tr. 35:17-19.)  After the hearing, the bankruptcy court entered an order denying the sanctions motions as to WOW and SMG.  (*In re McCormick*, Case No. 17-55146, ECF No. 70 Dec. 15, 2017 (WOW), ECF No. 75 Dec. 20, 2017 (SMG).)

As was his right, McCormick filed timely notices of appeal and the cases were docketed as BAP Case Nos. 17-8039 (WOW) and 17-8040 (SMG).

Meanwhile, following resolution of the eviction action, McCormick vacated the apartment on October 24, 2017.[1]  On February 5, 2018, SMG's newly-hired property manager sent McCormick a "Statement of Deposit Account" ("SODA") letter.  The letter identified a security deposit of $300 and listed past due rent and other fees associated with the eviction, stating that "Payment is due upon receipt of this letter."  Further, SMG requested that McCormick call the office to make payment arrangements.

On Friday, February 16, 2018, McCormick called SMG regarding the SODA.  The following Monday SMG sent McCormick a letter retracting the SODA, asking him to disregard it, and apologizing for any inconvenience that it may have caused.

In return, McCormick demanded that SMG immediately pay him $55,000.00.  SMG declined.  On March 2, 2018, McCormick filed another motion to hold SMG in contempt for violation of the automatic stay related to the SODA.  The bankruptcy court held a hearing on the second motion on April 19, 2018, at which SMG admitted that sending the SODA to McCormick was a "technical" violation of the automatic stay but also asserted that it had not been willful, and that McCormick had not suffered any damages as a result.

---

[1]Following an order granting relief from the automatic stay, SMG resumed its eviction action against McCormick.  The eviction action was resolved when the parties agreed to an order in the state court.

At the hearing, McCormick again called his brother, this time as his only witness. Mark McCormick did not offer any specific evidence regarding damages. Rather, he merely asserted that his brother had incurred "[t]ravel costs, canceled classes, and the time that [he] had to take to prosecute this action." (Tr. 17:3-4, *In re McCormick*, Case No. 17-55146, ECF No. 133, April 19, 2018 ("April Tr.").) On cross-examination, Mark McCormick refused to answer any questions, citing his Fifth Amendment privilege against self-incrimination. The bankruptcy court allowed SMG to ask its questions, then pointed out that none of the questions required an answer that would have incriminated Mark McCormick. He still refused to answer.

When McCormick rested his case, the bankruptcy court asked him several times if he had any documents to offer as evidence, or if he would call himself as a witness. The bankruptcy court reminded McCormick, as it did in the earlier hearing, that his opening and closing statements, and the pleadings and exhibits attached to his motion, were not in the record of the hearing unless and until admitted. Moreover, the bankruptcy court informed him that if he wished to offer any evidence it must be done at the hearing. (April Tr. 23:1-24:8.) Following McCormick's case in chief, SMG again made an oral motion for the court to deny the motion, essentially under Fed. R. Civ. P. 52(c).

The bankruptcy court granted SMG's motion, finding that McCormick had not carried his burden of proof. The court held "there was absolutely no evidence presented to the Court regarding willfulness or sufficient evidence provided to the court regarding any damages." (April Tr. 27:5-7.) After the hearing, the bankruptcy court entered an order denying McCormick's sanctions motion. (*In re McCormick*, Case No. 17-55146, ECF No. 116 April 26, 2018.)

Again, McCormick timely filed a notice of appeal which was docketed as BAP Case No. 18-8015.

## DISCUSSION

Section 362(a) of the Bankruptcy Code provides, in relevant part, that the filing of a petition for relief under the Bankruptcy Code operates as a stay of "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case[.]" 11 U.S.C.

§ 362(a)(6). A violation of the automatic stay is treated as contempt of court, and compensable by sanctions. *Id.* § 362(k)(1). To recover under § 362(k), an individual must establish the following three elements: "(1) that a violation of the automatic stay occurred; (2) that the violation was committed willfully; and (3) that the violation injured the individual seeking damages." *Barclay v. Reimer & Lorber Co. LPA* (*In re Barclay*), No. 05–8019, 2006 WL 238139, at *4–5, (B.A.P. 6th Cir. Feb. 1, 2006) (citing *In re Skeen*, 248 B.R. 312, 316 (Bankr. E.D. Tenn. 2000)).

> In stay violation litigation, debtors bear the burden of proof to establish by a preponderance of evidence the following elements:
>> (1) that a bankruptcy petition was filed,
>>
>> (2) that the debtors are "individuals" under the automatic stay provision,
>>
>> (3) that the creditors received notice of the petition,
>>
>> (4) that the creditors' actions were in willful violation of the stay, and
>>
>> (5) that the debtors suffered damages.

*In re Flack*, 239 B.R. 155, 162–63 (Bankr. S.D. Ohio 1999) (quoting *In re Rainwater*, 233 B.R. 126, 155 (Bankr. N.D. Ala. 1999)).

The bankruptcy court determined that McCormick did not establish the final two elements as to either creditor. That is, he did not prove that the creditors' actions were willful violations of the stay, or that he suffered damages due to the creditors' actions. As the facts outlined above make clear, McCormick failed to proffer any evidence at the evidentiary hearing as to WOW's conduct at all. The record, therefore, supports the bankruptcy court's stated conclusions at the hearing, expressly incorporated into the resulting written order, that McCormick failed to prove that WOW willfully violated the automatic stay or that WOW's conduct precipitated any injury or damages. (*In re McCormick*, Case No. 17-55146, ECF No. 70 at 1–2 Dec. 15, 2017.)

Likewise, the bankruptcy court did not err in holding that "[McCormick] failed to carry his burdens of proof to demonstrate [SMG] violated the automatic stay under 11 U.S.C. § 362(a) or that [McCormick] suffered any injury or damages as a proximate cause and reasonable result

thereof." (*In re McCormick*, Case No. 17-55146, ECF No. 75 at 2 Dec. 20, 2017.) McCormick did not testify about the alleged violation of the automatic stay and, as before, did not move the email message into evidence. Moreover, the bankruptcy court correctly explained that, even if it had been admitted, the email that McCormick attached to his motion did not constitute a violation of the automatic stay. Rather, the court correctly determined that the email simply sought information regarding McCormick's intentions with respect to the property. It did not request payment of debt and it was not threatening in tone.

> [N]ot all communications from a creditor to a debtor are prohibited by § 362(a). *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 423 (6th Cir. 2000) ("Something more than mere contact must be alleged in order to state a claim under § 362."). For example, it has been held that the sending of informational account statements and notifications by mortgage holders directly to a debtor do not violate the automatic stay as long as the statements or notifications are not coercive. *Connor v. Countrywide Bank, N.A.* (*In re Connor*), 366 B.R. 133, 137–38 (Bankr. D. Haw. 2007).

*In re Cousins*, 404 B.R. 281, 286–87 (Bankr. S.D. Ohio 2009).

Moreover, the bankruptcy court did not err in finding that McCormick did not prove he suffered damages from SMG's SODA and that SMG willfully violated the automatic stay. As outlined above, McCormick failed to submit sufficient evidence on these matters at the evidentiary hearing on April 19, 2018.

> "An individual seeking damages under § 362(k) must prove, by a preponderance of the evidence, that damages were 'proximately caused by and reasonably incurred as a result of the violation of the automatic stay.'" *In re Baer*, No. 11-8062, 2012 WL 2368698, at *10 (6th Cir. BAP June 22, 2012) (*quoting Grine*, 439 B.R. at 471). To that end, "[a] debtor must be able to demonstrate the amount of damages incurred with a reasonable degree of certainty and must support this claim with evidence." *Id.* (citing, inter alia, *In re Perrin*, 361 B.R. 853 (6th Cir. BAP 2007)).

*In re Witham*, 579 B.R. 787, 793–94 (Bankr. E.D. Ky. 2017). As the BAP has previously held, "[w]here there was no proof in the record concerning actual damages suffered by the Debtors, the bankruptcy court properly declined to award damages, which could only have resulted from speculation." *Perrin*, 361 B.R. at 857.

McCormick offered no probative evidence of willfulness or of any injury or damages arising from any of the stay violations.  Accordingly, the bankruptcy court properly denied his motions.

Finally, the BAP finds McCormick's arguments on appeal regarding alleged bias by the bankruptcy judge, the supposed abrogation of his Fifth Amendment privilege, and other purported errors (though not specifically mentioned in this opinion) completely unsupported and without merit.  *See*, *e.g.*, *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("'Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.'") (citation omitted).

## CONCLUSION

The bankruptcy court's orders are AFFIRMED.